**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**DENISE RIGGLEMAN and
ALICIA RIGGLEMAN,**

       Plaintiffs,

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Civil Action No. 2:09-CV-66
(BAILEY)**

**COLONIAL MILLWORK, LTD., and
AULTCARE CORPORATION d/b/a
CARDINAL ADMINISTRATIVE SERVICES INC.,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are Defendant Colonial Millwork, LTD's Motion for Summary Judgment [Doc. 47] and Defendant AultCare Corporation d/b/a Cardinal Administrative Services Inc.'s Motion for Summary Judgment [Doc. 48], both filed on June 4, 2010. The plaintiffs responded on July 1, 2010, and Defendant AultCare replied on July 8, 2010. Defendant Colonial did not reply. Filed thereafter, and also pending before the Court, are Defendant Colonial's Motion to Strike [Doc. 51] and Defendant AultCare's Motion to Strike [Doc. 52]. The plaintiffs filed no response. This Court, having reviewed the motions and the memoranda submitted with regard thereto, finds that the defendants' motions for summary judgment should be **GRANTED IN PART** and **DENIED IN PART** and the defendants' motions to strike should be **DENIED**.

**BACKGROUND**

I.  **Factual History**

This action involves unpaid medical bills arising from medical treatment administered to Denise Riggleman and her daughter, Alicia Riggleman (the "plaintiffs") after a May 1, 2004, automobile accident in Randolph County, West Virginia. At the time of the accident and subsequent treatment, the plaintiffs were employees of Colonial Millworks, LTD ("Colonial"),[1] which provided them with health insurance. Claims made for medical expenses were to be administered by AultCare Corporation, which does business as Cardinal Administrative Services, Inc. ("AultCare").

After the accident, the plaintiffs were life-flighted to West Virginia University Hospitals ("WVU Hospitals"). Denise was transported by HealthNet Aeromedical Services ("HealthNet"). Her daughter, Alicia, was transported by Allegheny General Hospital ("Allegheny General"). At WVU Hospitals, the plaintiffs received treatment and were subsequently discharged. As a result of the medical treatment, certain bills were incurred, which were covered under the terms and conditions of the health insurance policy provided by Colonial and administered by AultCare. To date, not all of the plaintiffs' medical bills have been paid. For Denise, her bill from HealthNet in the amount of $7,218.80 remains unpaid and in collections, while AultCare paid Allegheny General on May 20, 2005, for Alicia's life-flight transportation. For Alicia, her bill from WVU Hospitals in the amount of $5,517.06 is being garnished from her wages as the result of a judgment obtained by the

---

[1]The Court notes that the West Virginia Secretary of State website lists the plaintiffs' employer as Colonial Millworks, LTD, while the parties refer to the entity as Colonial Millwork, LTD. The Court will hereinafter refer to the defendant as Colonial.

hospital, though AultCare paid Denise's WVU Hospitals bill on September 30, 2005.

## II.     Procedural History

On April 20, 2009, the plaintiffs brought suit in the Circuit Court of Randolph County, West Virginia, against Colonial and AultCare for damages in the amount of the unpaid bills, punitive damages, pre-judgment interest, and attorney fees and costs. The Complaint [Doc. 1-1] alleges breach of contract, common law bad faith, and violations of the West Virginia Unfair Trade Practices Act (WVUTPA), W.Va. Code 33-11-1 *et seq*. On May 29, 2009, the defendants removed the above-styled action to this Court based upon federal question jurisdiction, claiming that the health insurance coverage that Colonial provided to the plaintiffs was part of an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Colonial and AultCare filed answers on May 29, 2009 [Doc. 4], and June 11, 2009 [Doc. 9], respectively.

On June 4, 2010, shortly after the close of discovery, Colonial and AultCare filed the pending motions for summary judgment [Docs. 47 & 48]. Colonial provides two arguments in support of its motion. ([Doc. 47-1] at 2). First, summary judgment is appropriate because the plaintiffs' state law claims are preempted by ERISA. (Id.). Alternatively, if the Complaint is construed to represent a claim under ERISA for plan benefits, it must be dismissed as a matter of law because the plaintiffs never submitted the claims to AultCare for the amounts in question. (Id.). Colonial further states that it received no inquiry from either plaintiff about the unpaid bills. (Id. at 3). Finally, Colonial notes that the providers billed the only insurer on record, AIG Auto Claims. (Id. at 7). For Alicia, WVU Hospitals did not have AultCare on record as an insurer. (Id.). For Denise, HealthNet had only AIG Auto Claims on record as an insurer. (Id. at 7-8).

3

AultCare presents two similar arguments in support of its motion. First, the plaintiffs' breach of contract claim must fail because the only unpaid amounts with respect to the plaintiffs' medical bills represent either a claim not received from the provider or a deductible or coinsurance payment owed by the insured. ([Doc. 49] at 3-7). Second, the plaintiffs' WVUTPA and common law bad faith claims are preempted by ERISA. (Id. at 7-8).

On July 1, 2010, the plaintiffs filed a Combined Response [Doc. 50], arguing that genuine issues of material fact exist to preclude summary judgment. Primarily, the plaintiffs argue that they provided timely notice to AultCare regarding all of the medical bills arising from the automobile accident. (Id. at 6, 8). In particular, the plaintiffs claim that Denise called AultCare on at least eight to ten occasions requesting that her and Alicia's bills be paid, and that Denise faxed their medical bills to AultCare. ([Docs. 47-5 & 47-6] at 5).

Secondarily, the plaintiffs argue that the circumstances surrounding the amounts AultCare paid corroborate the plaintiffs' claim that they notified AultCare of the medical bills that remain unpaid. ([Doc. 50] at 6-9). First, with regard to Alicia's unpaid WVU Hospitals bill, the plaintiffs emphasize that WVU Hospitals removed each of their bills from collections on the same day, and that an insurance claims specialist for WVU Hospitals testified that one reason an account is removed from collections is that an insurance company has contacted the hospital to negotiate a claim. (Id. at 8). Next, with regard to Denise's unpaid HealthNet bill, the plaintiffs note that AultCare paid Alicia's Allegheny General bill on May 20, 2005, and Denise's WVU Hospitals bill on September 30, 2005, both over a year after the automobile accident. (Id. at 9). The plaintiffs argue that the timing of these payments is consistent with AultCare's receipt of their fax in the early to middle part of 2005. (Id.).

As such, the plaintiffs claim they have presented a genuine issue of material fact as to whether AultCare received the bills in question and merely failed to process them. (Id.).

Lastly, the plaintiffs argue that summary judgment is also barred because AultCare improperly charged Denise an additional ten percent co-payment on a bill owed to University Health Associates ("UHA"). (Id. at 10). Specifically, AultCare assessed a thirty-percent co-payment against Denise instead of the twenty-percent co-payment provided for in the insurance contract, thus breaching the terms of their agreement. (Id.).

On July 8, 2010, the defendants each moved to strike the plaintiffs' Combined Response as untimely [Docs. 51 & 52]. In support of their motions, the defendants cite the Scheduling Order [Doc. 22] in this matter, which provides a June 19, 2010 due date for the plaintiffs' responses. Plaintiffs, however, filed their Combined Response on July 1, 2010. As such, the defendants request that this Court strike the Combined Response as untimely.

Also on July 8, 2010, AultCare filed its Reply [Doc. 54], arguing, *inter alia*, that the plaintiffs have failed to present a genuine issue of material fact on their breach of contract claim, if construed as an ERISA claim. ([Doc. 54] at 1-4). In particular, AultCare challenges the plaintiffs' assertion that they faxed their medical bills to AultCare as insufficient to create a genuine issue of material fact. (Id.). First, AultCare argues that accepting the plaintiffs' assertion that WVU Hospitals' removal of their bills from collections on the same day as proof that AultCare, in fact, received both bills would inappropriately require building one inference upon another. (Id. at 1-2). Similarly, AultCare argues that allowing the timing of the payments it made to create a genuine issue of material fact as to whether AultCare received Denise's HealthNet bill would be "another case of supposition." (Id. at 2-4). Drawing either of these inferences, AultCare argues, would also

5

require the Court to ignore testimony that AultCare never received either of the unpaid bills. (Id. at 2, 4). Next, AultCare argues that the inaccurate co-pay application on Denise's UHA bill, which resulted in an additional charge of $43.20, is *de minimis* and should not be the sole basis for an ERISA claim. Finally, AultCare argues that the plaintiffs' common law bad faith and WVUTPA claims are subject to ERISA preemption.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine

6

issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

## II. Analysis

### A. Count I: Breach of Contract

The plaintiffs do not dispute that their health insurance plans are "employee benefits plan[s]" governed by ERISA. As such, Count I is preempted by ERISA, to the extent it pursues a breach of contract claim based upon state law. See **Kannapien v. Quaker Oats Co.**, 507 F.3d 629, 640 (7th Cir. 2007) (state law contract and promissory estoppel claims preempted by ERISA). However, Count I provides sufficient notice to state a federal claim for recovery of benefits under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B). Accordingly, this Court exercises its discretion to construe Count I as an ERISA claim. See **Bartholet v. Reishauer A.G.**, 953 F.2d 1073 (7th Cir. 1992).[2]

The defendants do not dispute that the unpaid medical bills merit coverage under the plaintiffs' plans; instead, they claim AultCare never received the claims for the bills that remain unpaid. More specifically, the defendants repeatedly emphasize that AultCare did not receive the medical bills in question *from* the relevant providers. This position completely ignores the scenario, and in fact the plaintiffs' assertion, that the plaintiffs

---

[2]This Court also exercises its discretion not to dismiss Count I, construed as an ERISA claim, for failure to exhaust administrative remedies. The peculiar circumstances supporting the claim do not implicate the exhaustion doctrine. In particular, AultCare did not deny coverage. Instead, AultCare argues it never received the bills in question. Thus, no denial decision exists from which the plaintiffs were required to appeal before seeking the jurisdiction of this Court. As such, if a genuine issue of material fact exists, Count I may proceed.

7

provided AultCare with their bills.

Thus, the sole issue is whether the plaintiffs have presented a genuine issue of material fact as to whether the plaintiffs provided AultCare with the medical bills in question. For the reasons that follow, this Court finds that the plaintiffs have met this burden.

### 1. Alicia's WVU Hospitals Bill

In answering AultCare's Interrogatory No. 3, Alicia asserted that she "remember[s] [her] mother faxing [their] medical bills to [AultCare] although [her mother] cannot find the fax confirmation page." ([Doc. 47-5] at 5). Alicia also stated that she "remember[s] [her] mother calling [AultCare] on at least eight to ten occasions asking that [their] bills be paid and asking why they had not been paid." (Id.). Denise corroborated these statements in her interrogatory answers.

As support for these assertions, the plaintiffs outline WVU Hospitals' identical efforts to collect on each of their bills. On September 19, 2004, WVU Hospitals placed both of the plaintiffs' bills with collections. WVU Hospitals then removed both bills from collections on September 23, 2004. When asked why an account would be removed from collections, WVU Hospitals' insurance claims specialist testified that it could be the result of contact from an insurance company to negotiate a claim. On September 30, 2005, a year after both bills were removed from collections, AultCare paid Denise's bill, but not the bill for Alicia.

Resolving all doubts, and drawing all reasonable inferences, in favor of the non-movants, this Court finds that the plaintiffs have presented a genuine issue of material fact with regard to whether the plaintiffs provided AultCare with Alicia's WVU Hospitals bill. In particular, based upon the plaintiffs' sworn discovery responses as well as the undisputed

debt collection treatment that each of the plaintiffs' WVU Hospitals bills received, a reasonable trier of fact could conclude that the plaintiffs provided AultCare with Alicia's WVU Hospitals bill. Accordingly, Count I **MAY PROCEED** as an ERISA claim insofar as it is based upon AultCare's failure to pay Alicia's WVU Hospitals bill.

### 2. Denise's HealthNet Bill

As described above, both plaintiffs state in their sworn discovery responses that Denise provided AultCare with the plaintiffs' medical bills. That the plaintiffs specifically reference the unpaid bills later in those same discovery responses indicates that the plaintiffs assert that Denise provided AultCare with all of the plaintiffs' medical bills, including Denise's HealthNet (life-flight) bill.

In support of this assertion, the plaintiffs cite the timing of the payments AultCare did submit to the plaintiffs' medical providers. AultCare paid Denise's WVU Hospitals bill on September 30, 2005, and Alicia's Allegheny General (life-flight) bill on May 20, 2005. The plaintiffs emphasize that each of these payments were made over a year after the May 1, 2004, automobile accident. The plaintiffs argue that these payments are consistent with: (1) the plaintiffs providing AultCare with their medical bills in the early to middle part of 2005; (2) AultCare processing the bills for these payments; and (3) AultCare failing to process the bills that remain unpaid, including Denise's HealthNet bill.

Resolving all doubts, and drawing all reasonable inferences, in favor of the non-movants, this Court finds that the plaintiffs have presented a genuine issue of material fact with regard to whether the plaintiffs provided AultCare with Denise's HealthNet bill. Specifically, based upon the plaintiffs' sworn discovery responses as well as the undisputed

timing of AultCare's payments, a reasonable trier of fact could conclude that the plaintiffs provided AultCare with Denise's HealthNet bill.  Accordingly, Count I **MAY PROCEED** as an ERISA claim insofar as it is based upon AultCare's failure to pay Denise's HealthNet bill.

### 3. Denise's Co-Payment to UHA

AultCare does not dispute that it incorrectly applied an additional ten-percent co-pay to Denise's UHA bill.  Instead, AultCare argues that the $43.20 difference is too minimal to provide a basis for an ERISA claim.  This argument is in error.  Section 1132(f) of ERISA explicitly states that "[t]he district courts of the United States shall have jurisdiction, without respect to the *amount in controversy* or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1332(f) (emphasis added).  Accordingly, Count I **MAY PROCEED** as an ERISA claim insofar as it is based upon AultCare's inaccurate application of the co-pay percentage on Denise's UHA bill.[3]

### B. Count II: Common Law Bad Faith and WVUTPA

The defendants contend that the state claims contained in Count II are preempted by ERISA.  This Court agrees.  First, in **Pilot Life v. Dedeaux**, 481 U.S. 41, 48-53 (1987), the Supreme Court of the United States held that state claims of common law bad faith are preempted by ERISA.  Second, in **Custer v. Pan Am. Life Ins. Co.**, 12 F.3d 410, 419-20

---

[3]The Court notes that the plaintiffs may only seek payment of the unpaid bills, attorney fees and costs, and pre-judgment interest as remedies for Count I.  Punitive damages are not available under ERISA.  *See* **Fetterhoff v. Liberty Life Assur. Co.**, 282 Fed.Appx. 740, 742 (11th Cir. 2008) (citing **Mass. Mut. Life Ins. Co. v. Russell**, 473 U.S. 134, 144 (1985)).

Moreover, insofar as ERISA claims are adjudicated exclusively as bench trials, *see* **Phelps v. C.T. Enters**, 394 F.3d 213, 222 (4th Cir. 2005), this Court hereby **AMENDS** the Scheduling Order [Doc. 22] in this matter, striking the requirement for Voir Dire, Jury Instructions, and Verdict Form, and the reference to jury selection.

(4th Cir. 1993), the Fourth Circuit held that claims under the WVUTPA are controlled by *Pilot Life* and are thus preempted by ERISA. Accordingly, Count II is **DISMISSED WITH PREJUDICE**.

### C. Motions to Strike

The defendants move to strike the plaintiffs' Combined Response as untimely. In support of their request, the defendants note that the plaintiffs filed their Combined Response on July 1, 2010, though the Scheduling Order set a June 19, 2010, deadline for responses.

Even though this Court does not sanction failure to obey its scheduling orders, it also recognizes its discretion in dealing with such disobedience. *See* Fed. R. Civ. P. 16(f)(1)(C) ("[T]he court *may* issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order."). In its discretion, and because the Court finds no prejudice on the part of the defendants, this Court **DENIES** the defendants' motions to strike.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Colonial Millwork, LTD's Motion for Summary Judgment [Doc. 47] and Defendant AultCare Corporation d/b/a Cardinal Administrative Services' Motion for Summary Judgment [Doc. 48] should be, and hereby are, **GRANTED IN PART** and **DENIED IN PART**. Moreover, Defendant Colonial's Motion to Strike [Doc. 51] and Defendant AultCare's Motion to Strike [Doc. 52] should be, and hereby are, **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: July 13, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE